## UNITED STATES COURT OF INTERNATIONAL TRADE

———————————————————————  :
                                        :
UNIQUECHEM SOLUTIONS INC. AND           :
ALL TRADE & CARGO NETWORK LTD.          :
                                        :
Plaintiffs,                             :
                                        :
v.                                      :
                                        :
UNITED STATES OF AMERICA;               :
OFFICE OF THE UNITED STATES TRADE       :
REPRESENTATIVE;                         :        COURT NO. 22-cv-00311
KATHERINE TAI, U.S.TRADE REPRESENTATIVE; :
U.S. CUSTOMS AND BORDER PROTECTION;     :
CHRISTOPHER MAGNUS, U.S. CUSTOMS AND    :
BORDER PROTECTION COMMISSIONER,         :
                                        :
Defendants.                             :
———————————————————————  :

## COMPLAINT

Plaintiffs Uniquechem Solutions Inc. and All Trade & Cargo Network Ltd., by and through their

attorneys The Obert Law Firm, P.L.L.C., allege and state as follows:

1.      This action challenges Defendants' unlawful imposition of a third and fourth

round of additional *ad valorem* tariffs on certain imported products originating in The People's

Republic of China ("China") pursuant to Section 301 of the Trade Act (19 U.S.C. §2411)

("Section 301") and covered by Defendant Office of the United States Trade Representative's

("USTR") *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices

Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974

(Sept. 21, 2018) ("List 3") and *Notice of Modification of Section 301 Action: China's Acts,

Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,

84 Fed. Reg. 43,304* (Aug. 20, 2019) ("List 4").

2.      Plaintiffs allege that Defendants' implementation of the List 3 and List 4 tariff action and unlawful imposition and collection of additional tariffs on products covered by List 3 and List 4 violates Section 301, as Defendant USTR failed to issue its List 3 and List 4 within the statutorily defined 12-month time period required by Section 304 of the Trade Act (19 U.S.C. §2414) ("Section 304").

3.      Plaintiffs allege that Defendants' implementation of the List 3 and List 4 tariff actions and unlawful imposition and collection of additional tariffs on products covered by List 3 and List 4 violates Section 307 of the Trade Act (19 U.S.C. §2417) ("Section 307"), as Section 307 does not provide Defendant USTR with authority to expand the imposition and assessment of tariffs to additional imports from China as a response to China's retaliatory duties and other unrelated issues that are unconnected to those initially investigated by Defendant USTR under Section 301.

4.      Plaintiffs further allege that Defendants' implementation of the List 3 and List 4 tariff actions and unlawful imposition and collection of additional tariffs on products covered by List 3 and List 4 violates the Administrative Procedure Act ("APA"), in so much as that Defendant USTR did not: (1) provide sufficient opportunity for comment; (2) consider relevant factors when making its decision; and (3) establish a nexus between the record facts and its decisions.

5.      The Court should therefore set aside Defendants' actions as *ultra vires* and otherwise contrary to law and order Defendants to refund (with interest) any tariffs paid by Plaintiffs pursuant to List 3 and List 4 with interest as provided by law.

**JURISDICTION**

6.      The Court retains "exclusive" subject matter jurisdiction over this action pursuant to 28 U.S.C. §1581(i)(1)(B), which provides for "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for...tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. §1581(i)(1)(B).

**PARTIES**

7.      Plaintiff Uniquechem Solutions Inc. is a privately held company organized under the laws of Ontario, Canada.  Plaintiff All Trade & Cargo Network Ltd. is a privately held company organized under the laws of Ontario, Canada.  Plaintiffs are importers of various chemical and silicon products, which are subject to the additional *ad valorem* tariffs under List 3 and/or List 4.  Plaintiffs have both suffered monetary loss due to the imposition of duties under List 3 and List 4 and continue to suffer a direct monetary loss each time they import Chinese-origin goods covered by List 3 and List 4. Plaintiffs expect to continue to import products that are covered by List 3 and List 4.

8.      Defendant United States of America ("United States" or "U.S.") received Plaintiffs' payments of the disputed tariffs and is the statutory defendant under 5 U.S.C. §702 and 28 U.S.C. §1581(i)(1)(B).

9.      Defendant USTR, an executive agency of the United States, is responsible for the investigation of foreign country trade practices under Section 301 and the implementation of necessary and appropriate responses thereto, subject to the direction of the President of the

United States. Defendant USTR conducted the Section 301 investigation at issue in this action and made numerous decisions regarding List 3 and List 4.

10.     Ambassador Robert E. Lighthizer ("Lighthizer") is the former United States Trade Representative and director of Defendant USTR. In fulfilling both roles, Lighthizer made numerous decisions regarding List 3 and List 4.

11.     Defendant Katherine Tai currently holds the position of USTR and serves as the director of the Office of the USTR. In this capacity, she made numerous decisions regarding List 3 and List 4.

12.     Defendant U.S. Customs and Border Protection ("CBP") is the agency of the United States tasked with the collection of duties and tariffs on imports. Defendant CBP collected (and continues to collect) the payments made by Plaintiffs with respect to the List 3 and List 4 tariffs imposed by Defendant USTR, which are at issue herein.

13.     Mark A. Morgan was the former Acting Commissioner of CBP.  As Acting Commissioner of CBP, Defendant Morgan was responsible for the administration of CBP's collection of tariffs paid by Plaintiffs under List 3 and List 4.

14.     Troy A. Miller was the former Acting Commissioner of CBP.  As Acting Commissioner of CBP, Defendant Miller was responsible for the administration of CBP's collection of tariffs paid by Plaintiffs under List 3 and List 4.

15.     Defendant Christopher Magnus is the current Commissioner of CBP.  In that capacity he oversees CBP's administration, enforcement and collection of tariffs imposed pursuant to List 3 and List 4, including such payments made by Plaintiffs.

**STANDING**

16.     Plaintiffs have standing to commence this action because it was required to pay (and continues to pay) at time of importation of their respective goods into the United States the unlawful Section 301 tariffs imposed pursuant to List 3 and List 4.  As such, Plaintiffs are "adversely affected or aggrieved by agency action within the meaning of" the APA, which states in pertinent part "[a]ny civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5." 5 U.S.C. §702; *see* 28 U.S.C. §2631(i). Tariffs imposed by Defendants pursuant to List 3 and/or List 4a adversely affected and aggrieved Plaintiffs because they were required to pay these unlawful duties.

**TIMELINESS OF THE ACTION**

17.     Pursuant to 28 U.S.C. §1581(i)(1)(B), a plaintiff must commence an action "within two years after the cause of action first accrues." 28 U.S.C. §2636(i).

18.     Plaintiffs' claims accrued and continued to accrue upon liquidation of their respective entries subject to the List 3 and List 4 tariffs, at which time CBP determined that Plaintiffs' obligations to pay those tariffs to be final. Thus, Plaintiffs have timely filed this action with respect to all such entries which were liquidated on or after the date two years prior to the date of the filing of this action, including all entries liquidated subsequent to the date of this filing.

19.     Alternatively, Plaintiffs' claims accrued and continue to accrue upon their respective payments of deposits on the List 3 and List 4 tariffs at the time of entry. Plaintiffs

have timely filed this action with respect to all such entries filed within the previous two years of the date that Plaintiffs first paid the List 3 and List 4 duties.

## RELEVANT LAW

20.    Section 301 explicitly authorizes Defendant USTR to investigate a foreign country's trade practices. 19 U.S.C. §2411(b).

21.    If Defendant USTR's investigation uncovers an "unreasonable or discriminatory" practice, Defendant USTR may take "appropriate" action, including the imposition of tariffs on imports from the country administering the unfair practice. *Id.* §2411(b), (c)(1)(B).

22.    Section 304 explicitly requires that Defendant USTR determine within 12 months after the initiation of the underlying investigation what, if any, action to take. *Id.* §2414(a)(1)(B), (2)(B).

23.    Pursuant to Section 307, Defendant USTR may only "modify or terminate" an action taken pursuant to Section 301 when the "burden or restriction on United States commerce" imposed by the investigated foreign country's practice has "increased or decreased" or when the action "is no longer appropriate." *Id.* §2417(a)(1)(B), (C).

## RELEVANT FACTS

24.    On August 14, 2017, the President of the United States directed Lighthizer to consider initiating a targeted investigation pursuant to Section 301(b) concerning China's laws, policies, practices, and actions related to intellectual property, innovation, and technology. *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39,007 (August 17, 2017).

25.     On August 18, 2017, Defendant USTR initiated its investigation into Chinese technology transfer and intellectual property practices. *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 82 Fed. Reg. 40,213 (August 24, 2017).

26.     On March 28, 2018, Defendant USTR published its report of its investigation in *OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (March 22, 2018), wherein it concluded that certain investigated "acts, policies, and practices of the Chinese government related to technology transfer, intellectual property, and innovation are unreasonable and discriminatory and burden or restrict U.S. commerce." *Id. at 17.*

27.     On April 6, 2018, USTR published notice of its intent to impose "an additional duty of 25 percent on a list of products of Chinese origin." *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018). The products on the proposed list covered 1,333 tariff subheadings with a total value of "approximately $50 billion in terms of estimated annual trade value for calendar year 2018." Id. at 14,907.USTR explained that it chose $50 billion because that amount was "commensurate with an economic analysis of the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by USTR's Section 301 investigation." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Under Section 301 Action, USTR Releases Proposed Tariff List on*

*Chinese Products* (Apr. 3, 2018), available at https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301- action-ustr.

28.     On June 20, 2018, Defendant USTR published its *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 83 Fed. Reg. 28,710* (June 20, 2018), otherwise known as "List 1", in which Defendant USTR imposed an additional 25 percent *ad valorem* tariff on certain identified products of China.

29.     In response to Defendant USTR's imposition of the additional 25 percent *ad valorem* List 1 and List 2 tariffs, China imposed similar 25 percent *ad valorem* tariffs on $50 billion of U.S.-origin goods to coincide with the start of the United States' collection of the List 1 ($34 billion on July 6, 2018) and proposed List 2 ($16 billion on August 23, 2018) tariffs.

30.     On July 10, 2018, Lighthizer confirmed that China's retaliatory tariffs motivated Defendant USTR's proposed action, stating that such actions were proposed "[a]s a result of China's retaliation and failure to change its practice." *Statement of U.S. Trade Representative Robert Lighthizer on Section 301 Action* (July 10, 2018), available at https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative.

31.     Public statements made by the President of the United States that same day further confirm that the proposed additional tariffs were related to the trade imbalance between the United States and China. See e.g., RealDonaldTrump, TWITTER (July 10, 2018, 9:17 PMEDT), https://twitter.com/realDonaldTrump/status/1005982266496094209.; @realDonaldTrump, Twitter (July 25, 2018, 7:01 AM EDT), https://twitter.com/realDonaldTrump/status/1022074252999225344.

32.     On July 17, 2018, in a clear response to China's retaliatory imposition of 25 percent *ad valorem* tariffs on U.S.-origin goods, and without any reference to China's technology transfer, intellectual property, or innovation policies, Defendant USTR proposed the imposition of tariffs on further categories of Chinese-origin products. *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 83 Fed. Reg. 33,608, 33,609* (July 17, 2018), initially set a deadline of August 17, 2018 for initial comments; August 20-23, 2018 for a public hearing; and August 30, 2018 for rebuttal comments. *Id*. at 33,608.

33.     In its July 17, 2018 notice, Defendant USTR cited as its authority Section 307(a)(1)(C), which provides that Defendant USTR "may modify or terminate any action, subject to the specific direction, if any, of the President with respect to such action, . . . if . . . such action is being taken under [Section 301(b)] of this title and is no longer appropriate." *Id.* at 33,609 (citing 19 U.S.C. §2417(a)(1)(c)).

34.     In its July 17, 2018 notice, Defendant USTR explicitly confirmed China's decision to impose "retaliatory duties" (i.e., tariffs) as the principal basis for Defendant USTR's proposed action, stating among other things: "China's response to the $50 billion action announced in the investigation and its refusal to change its acts, policies, and practices".

35.     In its July 17, 2018 notice, Defendant USTR explicitly tied the $200 billion in its proposed action to the level of retaliatory duties imposed by China on U.S. imports, noting that "action at this level is appropriate in light of the level of China's announced retaliatory action ($50 billion) and the level of Chinese goods imported into the United States ($505 billion in 2017)." *Id.* at 33,609.

36.     Although its July 17, 2020 notice referenced China's retaliatory measures, Defendant USTR did not explicitly identify any increased burdens or restrictions on U.S. commerce resulting from the unfair practices that USTR had investigated, as required by Section 307 (19 U.S.C.§2417(a)(1)(B), (C)).

37.     On July 18, 2018, Lighthizer issued a press release discussing the proposed Section 301 action, stating in pertinent part "China has since retaliated against the United States by imposing tariffs on $34 billion in U.S. exports to China, and threatening tariffs on another $16 billion.  It did this without any international legal basis or justification…. As a result of China's retaliation and failure to change its practices, the President has ordered USTR to begin the process of imposing tariffs of 10 percent on an additional $200 billion of Chinese imports…."

38.     On August 1, 2018, alleging China's unlawful retaliation against the United States, Defendant USTR announced that it would impose an additional 25 percent *ad valorem* tariff on certain additional Chinese-origin products. *OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (Aug. 1, 2018).

39.     On August 16, 2018, Defendant USTR published its *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 83 Fed. Reg. 40,823, 40,823-24* (Aug. 16, 2018), otherwise known as "List 2", in which it imposed an additional 25 percent *ad valorem* tariff on certain identified products of China.

40.     On September 17, 2018, the President of the United States issued a statement announcing that, as a result of China's decision to "impose new tariffs in an effort to hurt the United States economy," he had directed USTR to impose 10 percent *ad valorem* tariffs on $200

billion of additional imports from China. *THE WHITE HOUSE*, *Statement from the President* (Sep. 17, 2018).

41.     On September 21, 2018, more than 12 months after its August 24, 2017 initiation of the investigation, Defendant USTR published its final List 3 of affected products subject to the additional tariffs, which would be applied to all listed products that enter the United States from China on or after September 24, 2018.  *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 83 Fed, Reg, 47,974* (Sep. 21, 2018).

42.     In its September 21, 2018 notice, Defendant USTR justified its action under "Section 307(a)(1)(B)" (19 U.S.C. §2417(a)(1)(B)) as a modification of the existing Section 301 action, because the burden on United States commerce had allegedly continued to increase. Citing "Section 307(a)(1)(C)," 19 U.S.C. §2417(a)(1)(C), Defendant USTR further specified in its September 21, 2018 notice that Chinese retaliation made the existing action no longer "appropriate."

43.     On September 24, 2018, Defendants USTR and CBP began imposing and collecting such List 3 tariffs on all listed products entered into the United States from China at the rate of 10 percent *ad valorem*.

44.     On May 9, 2019, Defendant USTR announced its intent to raise the tariff rate on List 3 goods from 10 percent *ad valorem* to 25 percent *ad valorem*, effective either May 10, 2019 or June 1, 2019, depending on the day of export.  *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 84 Fed. Reg. 20,459* (May 9, 2019); see also *Implementing*

*Modification to Section 301 Action: China's Acts, Policies, and Practices Related to Technology*

*Transfer, Intellectual Property, and Innovation, 84 Fed. Reg. 21,892* (May 15, 2019).

45.     In its May 9, 2019 notice, Defendant USTR cited China's decision to "retreat from specific commitments agreed to in earlier rounds" of negotiations as the basis for the increase in the duty rate. *84 Fed. Reg. at 20,459.*

46.     Unlike past practice concerning the imposition of new tariffs, Defendant USTR did not seek public comment.  It simply announced that the increase would occur. *Id.*

47.     On May 17, 2019, USTR announced its intention to proceed with its implementation of Section 301 tariffs on additional products to be included in what would be referred to as List 4. *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 84 Fed. Reg. 22,564, 22,564* (May 17, 2019).

48.     According to the Defendant USTR's own statements in its May 17, 2019 notice, its rational for List 4 was to punish China for its failure to meet specific commitments made in prior negotiations and its further retaliation against the U.S. rather than China's policies with respect to technology transfer, intellectual property, or innovation.

49.     USTR invited the public to comment on proposed List 4 and participate in a hearing. Id. The public submitted nearly 3,000 comments. Docket No. USTR-2019-0004, https://beta.regulations.gov/document/USTR-2019-0004-0001. The timeline for participation in the hearing left little room for meaningful input as USTR required witnesses to submit drafts of their testimony by June 10, 2019, some seven days before the deadline for fully developed written comments, and then it again limited witnesses to five minutes of testimony at the hearing. Id.

50.     On August 1, 2019, citing China's failure to follow through on agricultural purchases and to reduce exports of fentanyl flowing into the United States, President Trump announced that the List 4 tariffs would become effective September 1, 2019 at a rate of 10% ad valorem. @realDonaldTrump, TWITTER (Aug. 1, 2019, 1:26 PM EDT), https://twitter.com/realDonaldTrump/status/1156979446877962243 (noting a "small additional Tariff of 10% on the remaining 300 Billion Dollars of goods and products coming from China into our Country").

51.     On August 20, 2019, more than 12 months after the initiation of the investigation (August 24, 2017), Defendant USTR announced that it would implement List 4 in two phases. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 84 Fed. Reg. 43,304* (Aug. 20, 2019).

52.     In its August 20, 2019 notice, Defendant USTR again relied upon the authority provided in Section 307(a)(1)(B) and (C) as its principal basis for modifying its prior action.

53.     Defendant USTR's August 20, 2019 notice refers to China's defensive actions including retaliatory tariffs as its basis for modifying its prior action.

54.     Defendant USTR's August 20, 2019 notice does not identify intellectual property, technology transfer or innovation as the reasons for List 4.

55.     As part of the first phase of List 4, Defendants USTR and CBP began imposing and collecting additional 10 percent *ad valorem* tariffs with respect to products that are entered for consumption, or withdrawn from warehouse for consumption, on or after September 1, 2019.

56.     To date, the second phase of List 4 has been suspended and has not yet been applied to imported goods form China. The second phase, however, may be imposed if directed by the President.

57.     On August 30, 2019, at the direction of the President, Defendant USTR determined to increase the rate of the additional duty applicable to the List 4 tariff subheadings covered by the August 20, 2019 notice from 10 percent *ad valorem* to 15 percent *ad valorem*. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation* 84 Fed. Reg. 45,821 (Aug. 30, 2019).  USTR explained that it increased the tariff rate because, shortly after it finalized List 4A and List 4B, "China responded by announcing further tariffs on U.S. goods." Id. at 45,822. USTR once again cited to China's retreat from its negotiation commitments and devaluation of its currency as grounds for its action. Id.

58.     On December 18, 2019, as a result of successfully negotiating a limited trade deal with China, USTR published notice that it would "suspend indefinitely the imposition of additional duties of 15 percent on products of China covered by" List 4B. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 69,447, 69,447 (Dec. 18, 2019). USTR also stated its intent to reduce the tariff rate applicable to products covered by List 4A, id., an action that ultimately became effective on February 14, 2020, when USTR halved the applicable duty rate, *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 3,741 (Jan. 22, 2020).

59.     On January 22, 2020, Defendant USTR determined to reduce the List 4 rate from 15 percent *ad valorem* to 7.5 percent *ad valorem*.  *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation* 85 Fed. Reg. 3,741 (Jan. 22, 2020).

60.     In the months that followed, the United States and China implemented the limited trade deal that they negotiated near the end of 2019. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *United States and China Reach Phase One Trade Agreement* (Dec. 13, 2019), https://ustr.gov/about-us/policy-offices/press-office/pressreleases/2019/december/ united-states- and-china-reach.

61.     On June 24, 2019, Defendant USTR invited the public to seek exclusion from List 3 tariffs on a product-specific basis. *Procedures for Requests to Exclude Particular Products From the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 84 Fed. Reg. 29,576* (Jun. 24, 2019).

62.     On October 11, 2019, Defendant USTR invited the public to seek exclusion from List 4 tariffs on a product-specific basis. *Procedures for Requests to Exclude Particular Products From the August 2019 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 84 Fed. Reg. 57,144* (Oct. 11, 2019).

63.     The tariffs imposed on products covered by List 3 remain in effect as of the date of this Complaint, with the exception of a limited number of products for which USTR granted exclusions from the duties. See, *e.g., Notice of Product Exclusion Extensions: China's Acts,*

*Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innova*tion, 85 Fed. Reg. 48,600 (Aug. 11, 2020).

64.     The tariffs imposed on products covered by List 4A remain in effect as of the date of this Complaint. Although the proposed duties on products covered by List 4B remain suspended, President Trump threatened to impose them if China did not meet its obligations under their limited trade deal. See, e.g., @realDonaldTrump, TWITTER (June 22, 2020, 10:22 PM EDT), https://twitter.com/realDonaldTrump/ status/1275252814206447618 ("The China Trade Deal is fully intact. Hopefully they will continue to live up to the terms of the Agreement!").

65.     Plaintiffs have been, and continue to be, required to pay these unlawful tariffs imposed and collected by Defendants United States, USTR, and CBP, under the direction of Defendants Tai and Magnus, pursuant to List 3 and/or List 4.

## STATEMENT OF CLAIMS

## COUNT ONE

## (DECLARATORY JUDGMENT—VIOLATION OF THE TRADE ACT OF 1974)

66.     Paragraphs 1 through 65 are incorporated by reference.

67.     Pursuant to 28 U.S.C. §2201(a), The Declaratory Judgment Act, any court of the United States is authorized to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

68.     The Trade Act of 1974 does not authorize the actions taken by Defendants that resulted in the List 3 and List 4 tariffs.

69.     Defendant USTR may only impose tariffs pursuant to Section 301 when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate." 19 U.S.C. §2411(b).

70.     Defendant USTR failed to predicate its action giving rise to List 3 and List 4 on any such determination.

71.     Section 304 requires that, if Defendant USTR concludes upon investigation that a foreign country maintains an unfair trade practice, defendant USTR must "determine what action, if any," to take within "12 months after the date on which the investigation is initiated." 19 U.S.C. §2414(a)(1)(B), (2)(B).

72.     Defendant USTR's action giving rise to List 3 occurred on September 21, 2018, more than 12 months after Defendant USTR initiated its underlying Section 301 investigation on August 18, 2017.

73.     Defendant USTR's action giving rise to List 4 occurred on August 20, 2019, more than 12 months after Defendant USTR initiated its underlying Section 301 investigation on August 18, 2017.

74.     Section 307 authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act when the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices increases or decreases. 19 U.S.C. §2417(a)(1)(B). Section 307, however, does not permit Defendants to increase tariffs for reasons unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301. Congress did not authorize Defendant USTR to escalate its focused investigatory findings into an open-ended trade war.

75.     Section 307 also authorizes Defendant USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act if the initial action taken by Defendant USTR "is no longer appropriate." 19 U.S.C. §2417(a)(1)(C). Section 307 does not authorize Defendants to increase tariff actions that are no longer "appropriate," but rather only to delay, taper, or terminate such actions.

76.     Plaintiffs are therefore entitled to a declaratory judgment as Defendants' actions giving rise to List 3 and List 4 are *ultra vires* and contrary to law.

## COUNT TWO

## (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)

77.     Paragraphs 1 through 76 are incorporated by reference.

78.     The APA authorizes the Court to invalidate and set aside agency action that is: "(A)rbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. §706(2).

79.     The imposition of List 3 and List 4 tariffs by Defendant USTR, for reasons other than those relating to technology transfer, intellectual property, and innovation, exceeded their authority under the Trade Act in promulgating List 3 and List 4 and, therefore, Defendant USTR acted "not in accordance with the law" and "in excess of statutory authority" for the reasons set forth in Count One.

80.     The imposition of List 3 and List 4 tariffs by Defendant USTR more than 12 months after the initiation of the investigation is outside the scope of statutory authority and fails to satisfy the procedures required by law.

81.     In support of its imposition of List 3 and List 4 tariffs, Defendant USTR and Lighthizer failed to offer any evidence for any asserted "increased burden" from China's intellectual property policies and practices that were the subject of USTR's Section 301 investigation.

82.     Defendant USTR and Lighthizer also promulgated List 3 and List 4 in an arbitrary and capricious manner because they: (1) did not provide a sufficient opportunity for comment; (2) failed to meaningfully consider relevant factors when making their decisions; and (3) failed to adequately explain their rationale.

83.     Defendant USTR's and Lighthizer's predetermined decision-making resulted in the unlawful imposition and collection by Defendant CBP of tariffs on imports covered by List 3 and List 4.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1. declare that Defendants' actions resulting in tariffs on products covered by List 3 and List 4 are unauthorized by, and contrary to, the Trade Act;

2. declare that Defendants arbitrarily and unlawfully promulgated List 3 and List 4 in violation of the APA;

3. vacate the List 3 and List 4 rulemaking;

4. order Defendants to refund, with interest, any tariffs paid by Plaintiffs pursuant to List 3 and List 4;

5. permanently enjoin Defendants from applying List 3 and List 4 against Plaintiffs and collecting any tariffs from Plaintiffs pursuant to List 3 and List 4;

6. award Plaintiffs their costs and reasonable attorney fees; and

7. grant such other and further relief as may be just and proper.

_____

Dated: October 21, 2022

Respectfully submitted,

/s/ Don M. Obert

Don M. Obert
The Obert Law Firm, P.L.L.C.
1206 Castle Hill Avenue
Bronx, New York 10462
T: 646-546-5111
*Attorneys for Uniquechem Solutions Inc.*
*and All Trade & Cargo Network Ltd.*

**CERTIFICATE OF SERVICE**

Pursuant to USCIT R. 4(b), (h) and (l), I hereby certify that on or before October 22, 2022, I will cause copies of Plaintiffs' Summons and Complaint to be served on the following parties by certified mail, return receipt requested. Such filing is timely pursuant to USCIT R. 4(l) as such service is made within 90 days of the filing of the summons and complaint.

_____

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, N.Y. 10278

Office of the General Counsel
Office of the U.S. Trade Representative
600 17th Street, N.W.
Washington, D.C. 20006

Attorney-In-Charge
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, N.W.
Washington, DC 20530

Office of Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Ave., N.W.
Washington, D.C. 20229

_____/s/ Don M. Obert_____